UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CLARISSA COFFEY
individually and on behalf of
all other similarly situated persons                                                                PLAINTIFF

v.                                                  No. 2:21-CV-02200

OK FOODS INC                                                                                         DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant OK Foods Inc's ("OK Foods") motion (Doc. 21) to dismiss. Plaintiff Clarissa Coffey filed a response (Doc. 22) in opposition. OK Foods filed a reply (Doc. 25). On February 10, 2022, OK Foods filed a second motion[1] (Doc. 48) to dismiss and brief (Doc. 49) in support. Plaintiff filed a response (Doc. 51). OK Foods, with leave of Court, filed a reply (Doc. 54). For the reasons set forth below, the motion will be DENIED.

**I.     Background**

OK Foods, an Arkansas citizen, operates multiple hatcheries, farms, feed mills, and processing plants across the United States. On or about May 3, 2016, Plaintiff, an Arkansas citizen, applied online for a position with OK Foods. The online application required applicants to provide certain personal data, including an applicant's name, Social Security number, birthdate, and address. Plaintiff provided this information and OK Foods hired her in April 2016. Between April 22 and April 30, 2020, an unknown third party accessed an OK Foods employee email which contained employee data, including names and Social Security numbers. An outside cybersecurity

---

[1] OK Foods' motion is styled as a "renewed motion." However, neither this Court nor the Oklahoma district transferor court has previously ruled on OK Foods' first motion to dismiss. This second motion instead is a supplement to OK Foods' first motion and provides citation to Eighth Circuit precedent instead of the Tenth Circuit precedent cited in the first motion.

1

firm investigated the data breach, and in April 2021 OK Foods notified employees if their personal information was part of the data breach. OK Foods provided affected employees with a free, one-year Experian IdentityWorks membership. The cybersecurity investigation revealed that, as of the date of OK Foods' notice, no personal information had been misused following the data breach.

On June 2, 2021, Plaintiff, along with Plaintiff Landon Johnson, filed a complaint against OK Foods in the Western District of Oklahoma. The complaint asserted claims against OK Foods for negligence, breach of implied contract, breach of confidence, invasion of privacy, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing, and included a class action allegation. An amended complaint was filed on July 29, 2021, and on July 30, 2021, Plaintiff Johnson voluntarily dismissed his claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Plaintiff Johnson was the only party who was a citizen of Oklahoma. OK Foods filed the pending motion to dismiss and argued Plaintiff entered into a binding arbitration agreement and lacked standing. The Western District of Oklahoma court set an evidentiary hearing because there were "fact questions as to whether Plaintiff received a copy of the arbitration agreement [and] whether Plaintiff signed the agreement." (Doc. 26). The evidentiary hearing was cancelled because Plaintiff's financial situation prohibited her from appearing in Oklahoma. Because the two remaining parties, OK Foods and Plaintiff, were Arkansas citizens, the Oklahoma district court ordered the parties to brief whether a transfer pursuant to 28 U.S.C. § 1404(a) was warranted. After briefing, the Oklahoma district court transferred the case to this Court. OK Foods' motion to dismiss remains pending.

OK Foods' motion to dismiss and compel arbitration argues the parties entered into a valid arbitration agreement which requires the parties to arbitrate Plaintiff's claims and further requires that questions of arbitrability should be decided by the arbitrator. OK Foods also argues Plaintiff

lacks standing because the amended complaint fails to sufficiently allege a concrete injury. Plaintiff argues the arbitration agreement is unenforceable and the amended complaint sufficiently alleges facts to demonstrate standing.

## II.     Discussion

### a.    Standing

OK Foods argues Plaintiff's amended complaint fails to allege a concrete injury because Plaintiff has only alleged an increased risk of identity theft. Plaintiff argues she sufficiently alleged an injury in fact because the amended complaint alleges Plaintiff has suffered numerous hard inquiries into her credit and an increased risk of identity theft. "Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies." *In re SuperValu, Inc.*, 870 F.3d 763, 765 (8th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "To establish an injury in fact, a plaintiff must show that her injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *In re SuperValu*, 870 F.3d at 768 (internal quotations and citations omitted). A plaintiff can show an injury is fairly traceable by demonstrating "a causal connection between the injury and the conduct complained of that is not the result of the independent action of some third party not before the court." *Id*. (alterations adopted) (internal quotations and citations omitted).

At the pleading stage Plaintiff must "clearly allege facts demonstrating the elements of standing" and the court accepts all the material allegations in the complaint as true and draws all inferences in Plaintiff's favor. *Id.* (internal quotations and citations omitted). Future injury can be sufficient for Article III standing if the plaintiff can demonstrate "that the threatened injury is

certainly impending, or there is a substantial risk that that the harm will occur." *Id*. at 769 (internal quotations omitted) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Whether an increased risk of future identity theft constitutes an injury in fact turns on the substance of the plaintiff's allegations. *Id.* (explaining differing conclusions in out-of-circuit precedent were based on specific allegations made by plaintiffs in each case).

In *in re SuperValu*, the Eighth Circuit found plaintiffs' complaint failed to sufficiently allege a substantial risk of future identify theft. 870 F.3d 763. Defendant SuperValu, Inc. operated grocery stores and suffered two cyber-attacks where "customers' financial information was allegedly accessed and stolen." *Id.* at 765. The cyber criminals responsible for the attacks received "payment card information of Defendant's customers [], including their names, credit or debit card account numbers, expiration dates, card verification value (CVV) codes, and personal identification numbers (PINs)." *Id.* The plaintiffs alleged the stolen information subjected them "to an imminent and real possibility of identity theft," and that hackers could use the information to commit fraud. *Id.* at 766. The Eighth Circuit held that the plaintiffs' "bare bones assertion that data breaches facilitate identity theft" was not supported by the plaintiffs' sole citation to a GAO report. Specifically, the plaintiffs' stolen card information "did not include any personally identifying information, such as social security numbers, birth dates, or driver's license numbers" which could demonstrate a substantial risk of future identity theft. *Id.* The GAO report stated that the card information "generally cannot be used alone to open unauthorized accounts" and there was "little to no risk that anyone will use the Card Information stolen in these data breaches to open unauthorized accounts in the plaintiffs' names, which is the type of identity theft generally considered to have a more harmful direct effect on consumers." *Id.* (internal quotations and citations omitted).

Here, accepting all material allegations in the amended complaint as true, the Court finds Plaintiff has alleged facts demonstrating a substantial risk of future identity theft. Plaintiff's personal identifying information, specifically her name and Social Security number, were accessed by an unknown third party. Unlike in *in re SuperValu*, or other out-of-circuit precedent[2], where the stolen information was limited to credit and debit card information, here the amended complaint pleads stolen social security numbers which create a higher risk of identity theft, and, therefore, Plaintiff has a substantial risk of identity theft. Plaintiff also alleges she has been notified of several hard credit inquires she did not initiate which occur when a person applies for a new line of credit.

OK Foods relies heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) to demonstrate Plaintiff lacks standing. However, the Court finds this case factually distinguishable. In *TransUnion*, the Supreme Court found 6,332 class members did not demonstrate a risk of future harm sufficient for Article III standing because the risk of dissemination to third parties was too speculative. *Id.* at 2211-12. The 6,332 class members had misleading Office of Foreign Assets Control ("OFAC") alerts created by TransUnion, but there was no evidence TransUnion had disseminated these misleading reports to third parties. *Id.* at 2212. The class members did not know the misleading alerts existed nor did they demonstrate "a sufficient likelihood that their individual credit information would be requested by third-party businesses and provided by TransUnion." *Id.* Here, unlike in *TransUnion* where the possibility TransUnion could disseminate the false reports was speculative, there is no dispute that Plaintiff's name and Social Security number were part of a data breach and accessed by an unknown third party, and Plaintiff has

---

[2] *See e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021) (discussing circuit split and the importance of the type of data stolen to satisfy the standing requirement).

demonstrated a sufficient likelihood this information could cause future identity theft. Plaintiff, at the pleading stage, has sufficiently alleged facts demonstrating the elements of standing.

### b. Arbitration

#### i. Choice of Law

"When a case is transferred under § 1404(a), the transferee district court applies the choice-of-law rules of the transferor court's State." *Steen v. Murray*, 770 F.3d 698, 701 (8th Cir. 2014) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). The Oklahoma district court transferred this case pursuant to 28 U.S.C. § 1404(a) because of the interest of justice and judicial economy and the convenience of the parties and witnesses. Because the case was transferred under § 1404(a), the Court applies Oklahoma choice-of-law principles. In Oklahoma, "the established choice of law rule in contract actions known as *lex loci contractus* is that, unless the contract terms provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made." *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1034 (Okla. 2006) (citations omitted). The arbitration agreement does not contain a choice-of-law provision, but it is undisputed that Plaintiff completed her online application in Arkansas, therefore, the Court will interpret the arbitration agreement under Arkansas law.

#### ii. Arbitration Agreement

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (citing *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006)). In determining whether a plaintiff's claims fall within the terms of the arbitration provision, the Court should not rule on the potential merits of the underlying claims. *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). The Court should determine first

whether there is a valid arbitration agreement and second, whether the claims fall within the terms of the arbitration provision. *Robinson v. EOR-ARK LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016).

"When parties submit affidavits in conjunction with a motion to compel arbitration, the district court treats the motion akin to a motion for summary judgment, viewing the record in a light most favorable to the nonmovant." *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 403 (8th Cir. 2021) (citation omitted). "The nonmoving party receives the benefit of all reasonable inferences supported by the evidence but has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Duncan v. Int'l Mkts. Live, Inc.*, No. 4:20-cv-00017, 2020 WL 6733636, at *3 (S.D. Iowa 2020) (internal citations omitted) (citing *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013). "A nonmoving party cannot create a genuine issue of material fact simply by submitting an affidavit that contradicts prior testimony[,] [b]ut a district court will consider an affidavit that does not contradict previous testimony or create a factual issue where none existed before." *Id.*

Whether an arbitration agreement is valid and enforceable is governed by state contract law. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009) (explaining that "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants"). Under Arkansas law, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004).

OK Foods argues a valid arbitration agreement exists because Plaintiff digitally signed the arbitration agreement when she applied for the OK Foods position. In support, OK Foods presented declarations of its Vice President of People Services stating the OK Foods records

7

demonstrate Plaintiff digitally signed the arbitration agreement. The declarations also provide a digitally signed copy of the arbitration agreement and an example of the online application process. Plaintiff argues a valid arbitration agreement does not exist because Plaintiff was not provided a copy of the agreement and does not recall signing the agreement as part of the application process. The Court finds a genuine issue of material fact exists as to the formation of an agreement, specifically whether Plaintiff received a copy of the agreement and digitally signed the agreement.[3]

OK Foods has not presented the exact materials Plaintiff saw during her application process and the option to "Print Package" or download the documents in the application packet only contains two pages, neither of which is the arbitration agreement. (Doc. 25-1, p. 8). Although OK Foods has presented a digitally signed copy of an arbitration agreement, Plaintiff states she never saw the arbitration agreement and filled out her online application by simply clicking submit, without digitally signing. Further, the digitally signed arbitration agreement is dated May 3, 2016, but Plaintiff's amended complaint alleges she completed her online application in April 2016. OK Foods has not presented Plaintiff's entire application or other evidence demonstrating Plaintiff completed her online application on May 3, 2016. Because Plaintiff's self-serving declaration does not contradict her pleading nor introduce a "sudden and unexplained revision of testimony," the Court cannot conclude as a matter of law that the parties did or did not enter into an arbitration agreement. *See id.* at 7 (finding a question of fact exists as to the formation of an arbitration agreement when plaintiff stated she had never seen arbitration agreement registration screen and defendant could only produce examples of what plaintiff actually saw during registration process). OK Foods' motion will be denied.

---

[3] The Court notes the Oklahoma district court also found these questions of facts exist. (Doc. 26).

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendant OK Foods' motions (Doc. 21 & 48) to dismiss are DENIED.  This case will be bifurcated in order to determine if a valid arbitration agreement exists.  First, a jury trial will be set to determine whether the parties entered into a binding arbitration agreement.  If a jury finds no agreement exists, discovery and a trial will continue on Plaintiff's claims.  An initial scheduling order will be entered setting a Rule 26(f) report due date and other deadlines.

IT IS SO ORDERED this 10th day of March, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE