UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CLARISSA COFFEY,
individually and on behalf of
all similarly situated persons                                              PLAINTIFF

v.                                      No. 2:21-CV-02200

OK FOODS INC.                                                               DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant OK Foods Inc.'s motion (Doc. 80) for summary judgment. Plaintiff Clarissa Coffey filed a response (Doc. 85) in opposition. OK Foods filed a reply (Doc. 87). The Court has considered both parties' briefs and their statements of facts (Docs. 81, 82, 86). For the reasons set forth below, the motion will be GRANTED.

## I.    Factual Background

This case arises from a breach of OK Foods' employee data. (Doc. 82, ¶ 1). This breach, which occurred in April 2020, allowed an unknown third party to access employee data including names and Social Security Numbers. An outside cybersecurity firm investigated the data breach, and in April 2021, OK Foods notified current and former employees whose personal information had been exposed. As of the date of OK Foods' notice, no personal information had been misused following the data breach. OK Foods provided affected employees with a free, one-year Experian IdentityWorks membership. Ms. Coffey is one of the affected former employees. *Id.*

Ms. Coffey worked for OK Foods in early May 2016. (Docs. 82, ¶ 5; 86, ¶ 7). Her time at OK Foods lasted four days. She completed the employment process in-person using an OK Foods computer. (Doc. 82, ¶ 9). In doing so, she selected a user ID and password. *Id.* ¶ 13. She did not share those login credentials with anyone, and nobody had access to the email Ms. Coffey

1

gave to OK Foods. *Id.* ¶¶ 14–15. Ms. Coffey was familiar with conducting transactions like this online because she has executed cell phone contracts and applied for other jobs electronically. *Id.* ¶¶ 23–24.

OK Foods uses a human resource management system called SuccessFactors provided by third-party SAP, a multinational software company. (Doc. 82, ¶ 35; Doc. 80-1, ¶ 7). OK Foods' Director of Human Resources, Gary Potts, provided a declaration detailing the SuccessFactors onboarding system. (Doc. 80-1). To use the SuccessFactors system, job applicants create unique login credentials, including a password chosen by the applicant. *Id.* ¶ 8. All applicants—those applying remotely and those applying in person—receive an email with a link to the online onboarding platform. *Id.* ¶ 9. The first step of the onboarding process required applicants to agree to use a click signature to sign documents. *Id.* After agreeing to use a click signature, applicants must sign several documents. *Id.* ¶ 10. The OK Foods arbitration agreement is one of those documents. *Id.* ¶ 11. Applicants must input their Social Security Number on the arbitration agreement in addition to the applicant's electronic signature. *Id.* After signing all the documents, applicants click a button on the screen labeled "Submit All Documents." *Id.* ¶ 13. Notably, the SuccessFactors system does not allow an applicant to submit documents before the applicant fully signs all the documents. *Id.* ¶ 14. The SuccessFactors system maintains the signed documents in secure cloud storage, which only authorized individuals can access. *Id.* ¶ 19. At OK Foods, the only authorized individuals are OK Foods' Director of Human Resources, in-house counsel, and VP of Human Resources. *Id.*

Mr. Potts declared Ms. Coffey's signature on her arbitration agreement was authentic. (Doc. 80-1, ¶ 6). Mr. Potts based this conclusion on his explanation of the SuccessFactors system, the signed arbitration agreement that is part of Ms. Coffey's employment documents, and a system

log of the SuccessFactors system related to Ms. Coffey's employment documents. See *id.* at 30–34. Ms. Coffey's arbitration agreement shows that Ms. Coffey digitally signed it on May 3, 2016. *Id.* at 32. OK Foods employee Walter Morales countersigned the agreement the same day. *Id.* Ms. Coffey's Social Security Number also appears on the agreement. *Id.* The SuccessFactors system log shows that Ms. Coffey signed the agreement at 1:25 p.m. and Mr. Morales countersigned at 2:29 p.m. *Id.* at 33. Between 1:24 p.m. and 1:27 p.m., the system log also shows Ms. Coffey signed forms titled "BSA PSM Awareness," "Employee Summary Form," "Hiring Packet 2016," "Acknowledgement Forms-04012016," a W-4, and "Emergency Contact Info." *Id.* at 33–34. Mr. Morales countersigned the Employee Summary, Hiring Packet 2016, and Acknowledgement Forms between 2:29 p.m. and 2:30 p.m. *Id.* Each of the documents in Ms. Coffey's file reflects that Ms. Coffey digitally signed the forms on May 3, 2016. *Id.* at 16–32.

The parties' arbitration agreement provides:

> Company [OK Foods] and Individual [Ms. Coffey] agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment, including but not limited to, all claims beginning from the period of application through cessation of employment at Company and any post-termination claims and all related claims against managers, by binding arbitration . . . .

Doc. 80-1, p. 30. The arbitration agreement indicates the parties agree the Federal Arbitration Act will govern the enforceability of the agreement's provisions. *Id.* The agreement also includes jury trial and class action waivers. *Id.* In all-caps, bold font just above the signature line, the agreement cautions the applicant:

> Individual and company understand, absent this agreement, they would have the right to sue each other in court, to initiate or be a party to a group or class action claim, and the right to a jury trial, but, by executing this agreement, both parties give up those rights and agree to have all employment disputes between them resolved by mandatory, final and binding arbitration.

*Id.* (emphasis omitted).

## II.     Procedural Background

On June 2, 2021, Plaintiff Landon Johnson sued OK Foods in the Western District of Oklahoma.  (Doc. 1).  The complaint asserted claims for negligence, breach of implied contract, breach of confidence, invasion of privacy, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing and included a class action allegation.  *Id.*  Ms. Coffey joined the case in an amended complaint filed July 29, 2021.  (Doc. 16).  One day later, Mr. Johnson voluntarily dismissed his claims under Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (Doc. 17).  Six months later and after briefing, the Oklahoma district court transferred the case to this Court under 28 U.S.C. § 1404(a) because Mr. Johnson had been the only party who was a citizen of Oklahoma and Ms. Coffey could not afford to appear in Oklahoma.  (Doc. 36).

After the transfer, this Court denied OK Foods' motion to dismiss and compel arbitration. (Doc. 55).  At that time, the Court concluded that genuine issues of material fact existed as to the formation of the arbitration agreement because OK Foods did not present the exact materials Ms. Coffey saw while applying and Ms. Coffey stated she did not see the arbitration agreement.  *Id.* at 8.  The Court bifurcated the case, setting a first jury trial "to determine whether the parties entered into a binding arbitration agreement."  *Id.* at 9.  Following additional time for discovery, which included Ms. Coffey and Mr. Potts' depositions, OK Foods moved for summary judgment on the issue of whether a binding arbitration agreement exists.

## III.    Legal Standard

On a summary judgment motion, the burden is on the moving party to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (cleaned up).

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (citing *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006)). In determining whether a plaintiff's claims fall within the terms of the arbitration provision, the Court should not rule on the potential merits of the underlying claims. *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). The Court should determine first whether there is a valid arbitration agreement and then whether the claims fall within the terms of the arbitration provision. *Robinson v. EOR-ARK LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016).

## IV. Analysis

OK Foods moved for summary judgment, arguing there is a binding arbitration agreement evidenced by Ms. Coffey's signed employment documents and the SuccessFactors system logs. Ms. Coffey argues the parties lacked mutual agreement to contract and the factual context showed OK Foods disclaimed forming a contract. The Court will address each argument in term.

### A. Contract Formation

State contract law governs whether arbitration agreements are valid. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731–32 (8th Cir. 2009). This Court previously found that

Arkansas law governs this dispute.  *See* Doc. 55, p. 6.  Under Arkansas law, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations.  *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004).  Ms. Coffey only argues the mutual agreement element is missing.  (Doc. 85, p. 13).

Ms. Coffey argues that the evidence shows she never signed the arbitration agreement because OK Foods' practice was to present arbitration agreements to employees after the employee completed an I-9 Form.  Mr. Potts testified that Ms. Coffey never completed her I-9 form, which is why OK Foods terminated Ms. Coffey's employment.[1]  (Doc. 85-4, p. 18:9–15).  Ms. Coffey takes this to mean that there is no way OK Foods presented her with the enrollment documents because it means OK Foods would have not followed its typical practices.  But OK Foods' argument that Ms. Coffey signed the documents does not rely on solely their typical practices.  OK Foods points specifically to the SuccessFactors logs which only authorized individuals can access.  (Doc. 80-1, ¶ 19).  Ms. Coffey points to no probative evidence that disputes the logs or the authenticity of Ms. Coffey's digital signatures.

Ms. Coffey also repeatedly testified that she did not recall signing the documents and that the documents contained irregularities.  In her deposition, Ms. Coffey testified she did not recall signing or seeing the arbitration agreements.  (Doc. 80-2, p. 39:14–18).  Ms. Coffey also testified that her grandmother's name is misspelled on the application—a mistake she would not make.  *Id.* at p. 52:17–19.  Ms. Coffey also argues there is a missing checkmark on a different page of the employment documents next to one of her digital signatures.  (Doc. 85, p. 12).  Ms. Coffey finally

---

[1] The parties dispute whether OK Foods terminated Ms. Coffey or whether Ms. Coffey quit.  That dispute is not material, so it cannot defeat summary judgment.  *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028–29 (8th Cir. 2006) (citing *Anderson*, 477 U.S. at 247–48).

points out that OK Foods had previously written up Walter Morales, the OK Foods employee who countersigned her documents, for inattention to detail.  *Id.* at 12–13.  These facts led Ms. Coffey to one conclusion: the documents "were likely signed by Defendant's employee, Walter Morales." *Id.* at 14.

Under Arkansas law, Ms. Coffey bears the burden to show OK Foods or Mr. Morales forged her signature.  *Daniel v. ABM Industries Inc.*, No. 4:21-cv-0269-KGB, 2022 WL 993801, at * 6 (E.D. Ark. Mar. 31, 2022) (citing *Fuller v. Norwood*, 592 S.W.2d 452, 453 (Ark. Ct. App. 1979)).  Courts have previously rejected forgery claims where evidence indicates a party consented to the use of electronic signatures, used that signature to sign documents, and the party does not offer evidence disputing logs from their employers' online management system.  *See Daniel*, 2022 WL 993801; *see also Curtis v. Contractor Mgmt. Servs., LLC*, No. 1:15-cv-487-NT, 2018 WL 6071999 (D. Me. Nov. 20, 2018).  *Daniel* presents facts nearly identical to the facts here.  The plaintiff in *Daniel* executed an arbitration agreement through the defendant companies' third-party vendor for onboarding.  2022 WL 993801, at *1.  She set up a temporary password using her email address for the third-party system.  *Id.*  Just like SuccessFactors, the third-party system in *Daniel* only allowed someone with the candidate's unique password to access the forms and electronically sign documents.  *Id.* at *8.  The Daniel court found there was a valid arbitration agreement because the plaintiff did not provide any probative evidence to support the forgery claim.  *Id.*

A mistyped name, missing checkmark, and Mr. Morales' previous disciplinary history do not provide any probative evidence that Mr. Morales or anybody at OK Foods forged Ms. Coffey's signature.  In short, Ms. Coffey's arguments only provide conjecture, speculation, or fantasy.  Such arguments are insufficient to defeat summary judgment.  *See Clay*, 754 F.3d at 539.  Ms. Coffey cannot point to any record evidence that shows OK Foods or Mr. Morales forged her signature.

7

Based on the record evidence, specifically the undisputed evidence about the SuccessFactors logs and electronic signatures, no reasonable juror could conclude that OK Foods forged Ms. Coffey's signature. And no reasonable juror could conclude that Ms. Coffey did not electronically sign the arbitration agreement based on the same undisputed evidence. Therefore, the Court concludes the parties signed a binding arbitration agreement.

**B.  Did OK Foods disclaim a contractual relationship?**

Ms. Coffey also claims there is a contractual ambiguity in the packet of employment documents. She points to two examples from the employment documents that state OK Foods did not intend its orientation or employee handbook to be an employee contract. First, OK Foods' acknowledgement of orientation reads "I understand the orientation is not an employee contract, but sets forth the general personnel policies of the Company . . . ." (80-1, p. 17). Second, the Employee Handbook acknowledgment reads "I understand that nothing contained in this Handbook is intended to, nor does it, create an express or implied employment contract between O.K. and me for either employment or the provision of any benefit or compensation." *Id.* at 26. Mr. Potts, OK Foods' HR Director, testified in his deposition these clauses, in his opinion, makes clear that applicants are at-will employees. (Doc. 85-4, p. 80:11–20). Neither of these clauses in separate onboarding documents create a material issue of fact regarding OK Foods' arbitration agreement.

Ms. Coffey points the Court to two cases to support her theory that the arbitration agreement should not be considered a separate contract, but neither case is instructive. Ms. Coffey first argues that arbitration agreements should be considered as part of the entire agreement, relying on *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998). *Barker* is not persuasive because (1) the Eighth Circuit interpreted Oklahoma law, not Arkansas law and (2) that case interpreted an

arbitration clause that was part of a franchise agreement, not a separate arbitration agreement like the one here. *Id.* at 791–92. Here, Ms. Coffey argues that all the onboarding documents should be considered as one large agreement. But the onboarding documents are distinct forms, each of which Ms. Coffey signed separately. Ms. Coffey then argues that Courts should interpret contracts as a whole, pointing to *Singletary v. Singletary*, 431 S.W.3d 234, 240 (Ark. 2013). That divorce case merely cited general contract interpretation principles. It does not clarify whether several separately signed documents constitute the same contract, so it is not helpful in the present case.

Finally, Ms. Coffey argues that OK Foods attempts to prove the arbitration agreement solely based on its general business practices. (Doc. 85, p. 17). If true, that would mean OK Foods might not have provided sufficient proof that Ms. Coffey agreed to the agreement. *See Alltel Corp. v. Sumner*, 203 S.W.3d 77, 80–81 (Ark. 2005)). But OK Foods does not rely solely on its general practices. OK Foods relies on Mr. Potts' deposition testimony, Mr. Potts' declaration about the SuccessFactors system, the signed employment documents (including the arbitration agreement), and the SuccessFactors system logs which provide a detailed list of every action Ms. Coffey took and every form Ms. Coffey digitally signed during her onboarding process. Ms. Coffey does not dispute any of this evidence with anything more than speculation, conjecture, and her inability to recall signing the arbitration agreement. And as courts in this district have previously found, failing to remember signing an arbitration agreement is not evidence that can defeat summary judgment. *Johnson v. Pizza Hut*, No. 1:16-CV-1089, 2017 WL 1064666, at *2 (W.D. Ark. Mar. 21, 2017). The Court thus finds that no reasonable juror could conclude there is no binding arbitration agreement between the parties.

## V.    Final Matters

Having concluded that there is a binding arbitration agreement between the parties, the

second question is whether the claims fall within the terms of the arbitration provision.  *Robinson*, 841 F.3d at 783-84.  OK Foods argues that the broad arbitration clause in the agreement covers all disputes arising out of the data breach.  Ms. Coffey did not offer any argument on this point.  The Eighth Circuit has held that incorporating the American Arbitration Agreement Rules into an agreement permits the arbitrator to resolve threshold questions of arbitrability.  *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011).  This includes whether an agreement covers a particular controversy.  *Id.* (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010)).  The parties' arbitration agreement states any arbitration "shall be conducted in accordance with the Rules of the AAA."  (Doc. 80-1, p. 31).  Also, the agreement also explicitly reserves "[q]uestions of arbitrability (that is whether an issue is subject to arbitration under this agreement)" to the arbitrator.  *Id.*  Therefore, if there is any dispute regarding whether the claims are arbitrable, that question is for the arbitrator.

Finally, the Court will dismiss rather than stay the action.  "While the Federal Arbitration Act 'generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it[,] . . . district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'"  *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021) (quoting *Green*, 653 F.3d at 769–70).  The broad language of the arbitration agreement covers the dispute.  The Court finds that arbitration will resolve the entire dispute, so it will dismiss the matter.

## VI.    Conclusion

IT IS THEREFORE ORDERED that Defendant OK Foods' motion (Doc. 80) for summary judgment is GRANTED.  Judgment will be entered separately.

IT IS SO ORDERED this 6th day of January, 2023.

*/s/ P. K. Holmes,* **III**

P.K. HOLMES, III
U.S. DISTRICT JUDGE